[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11514
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 21, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-01003-CV-MHS-1

AYDA BONASERA,

                                                        Plaintiff-Appellant,

versus

CITY OF NORCROSS,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 21, 2009)

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Ayda Bonasera, an Hispanic woman living in a predominantly white

neighborhood in the City of Norcross (the "City"), installed a second kitchen in her house and, in 1999, began renting rooms in her house to boarders. In 2006, following complaints from a neighbor, the City investigated Bonasera's house and cited her for violating City ordinances prohibiting junkyards and restricting the use of her property to "one-family residences and related uses." Bonasera was found guilty and assessed a fine for both violations.

Rather than appeal her conviction in state court, Bonasera sued the City and several City employees (hereinafter, referred to collectively as "the City") in federal court under the Fair Housing Act ("FHA") and under the Equal Protection Clause of the United States Constitution.[1] She alleged that her prosecution and conviction for violating the single-family zoning ordinance was motivated by racial animus and that the City selectively enforced its zoning ordinances in a way that created a disparate impact on Hispanics. Upon cross-motions for summary judgment, the district court found, inter alia, that Bonasera did not present any direct evidence of discriminatory intent and presented insufficient circumstantial evidence of discriminatory intent to create a genuine issue of material fact. The district court also found that Bonasera presented insufficient evidence of disparate

---

[1] Bonasera also asserted claims under the Fourth Amendment and under Georgia state law. Because Bonasera does not challenge the dismissal of these claims on appeal, we do not address them.

2

impact to support her claims under the FHA and the Equal Protection Clause.

Accordingly, the district court granted summary judgment in favor of the

Defendants. Bonasera appeals.

We review a district court's grant of summary judgment de novo. Thomas

v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007). Summary

judgment is appropriate when the evidence, viewed in the light most favorable to

the nonmoving party, presents no genuine issue of material fact and compels

judgment as a matter of law. Id. "There is no genuine issue of material fact if the

nonmoving party fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which the party will bear the burden of

proof at trial." Jones v. Gerwens, 874 F.2d 1534, 1538 (11th Cir. 1989).

In order to prevail on a claim under the FHA, a plaintiff must demonstrate

"unequal treatment on the basis of race that affects the availability of housing."

Jackson v. Okaloosa County Fla., 21 F.3d 1531, 1542 (11th Cir.1994). A plaintiff

can establish a violation under the FHA by proving (1) intentional discrimination,

(2) discriminatory impact, or (3) a refusal to make a reasonable accommodation.

See e.g., Schwarz v. City of Treasure Island, 544 F.3d 1201 (11th Cir. 2008);

Hallmark Developers, Inc. v. Fulton County, Ga., 466 F.3d 1276, 1283 (11th Cir.

2006). On appeal, Bonasera argues that she presented both direct and

circumstantial evidence of intentional discrimination and evidence suggesting that the City's enforcement of its ordinances had a disparate impact on Hispanics. She asserts, therefore, that the district court erred in granting summary judgment on her discrimination claims under the FHA and under the Equal Protection Clause. For the reasons stated herein, we affirm the thorough and well-reasoned order of the district court.

To prove intentional discrimination, "a plaintiff has the burden of showing that the defendants actually intended or were improperly motivated in their decision to discriminate against persons protected by the FHA." Reese v. Miami-Dade County, 242 F. Supp. 2d 1292, 1301 (S.D. Fla. 2002). We have held that a plaintiff may meet this burden by presenting evidence that the "decision-making body acted for the sole purpose of effectuating the desires of private citizens, that racial considerations were a motivating factor behind those desires, and that members of the decision-making body were aware of the motivations of the private citizens." Hallmark Dev., Inc., 466 F.3d at 1284 (citing United States v. Yonkers, 837 F.2d 1181, 1225 (2d Cir. 1987)). Here, Bonasera contends that she produced evidence that racism motivated her neighbor Bill Barks to file a complaint against her and that the City knowingly implemented the racist attitudes of her neighbor by acting upon the complaint. Bonasera argues that the deposition testimony of Bill

4

Barks and of City Marshal Holly Smith, considered in the light most favorable to Bonasera, is direct evidence that Barks' complaints were motivated by animus toward Hispanics and that Marshal Smith was aware of this animus. Specifically, Bonasera points to the portion of the deposition in which Marshal Smith testified that he heard Barks express his concerns at a meeting "about the neighborhood going down" and that Barks reported "like seven vehicles in [Bonasera's] driveway, numerous male Mexicans living there, gang types, looked like gang types, and said, we are zoned R-100." Bonasera also points to several of Marshal Smith's statements, which she asserts evidence his animosity toward Hispanics.

Upon consideration of the record as a whole, we agree with the district court that the statements to which Bonasera refers do not create a genuine issue of material fact as to whether the City and its employees acted with discriminatory intent in their citation and prosecution of Bonasera. A full reading of Barks's deposition makes clear that Barks was motivated by his desire for the even-handed enforcement of the zoning code rather than by animus toward the growing Hispanic population in his community. Indeed, the evidence establishes that Barks, as president of his neighborhood homeowners' association, had previously filed complaints against individuals of various racial backgrounds whom he believed to be in violation of the City's ordinances. The evidence further

5

establishes that Barks had a good faith belief that Bonasera was violating City zoning ordinances and that he supported his complaint to the City with specific evidence. Accordingly, because Barks's prior complaints had not been targeted against Hispanics and because his complaint against Bonasera was asserted in good faith and supported by evidence, we conclude that Bonasera has not presented sufficient evidence whereby a factfinder could conclude that the City was improperly motivated in its decision to prosecute Bonasera.

Bonasera also takes issue with the district court's conclusion that because the City rarely issued citations for violations of this specific zoning ordinance, Bonasera had not shown that the City's enforcement of the ordinance disparately impacted Hispanics. As the district court fully explains in its order, whether there is evidence of "disparate impact" is one of the four factors which the Eleventh Circuit has recognized as circumstantial evidence of discriminatory intent. See Hallmark Dev., Inc., 466 F.3d at 1285 (adopting the multi-factor test set forth in United States v. Hous. Auth. of Chickasaw, 504 F. Supp. 716 (S.D. Ala. 1980)). For the reasons set forth in the section below, we agree with the district court that Bonasera's evidence that the City has only issued citations for this type of violation two times, both against Hispanics,[2] is insufficient to withstand a motion for

---

[2] The evidence indicates that the City has issued a total of seven citations, excluding the one against Bonasera, for violations of the R-100 zoning district, all of which were issued

6

summary judgment. Accordingly, we conclude that Bonasera has failed to demonstrate through direct or circumstantial evidence that the City intentionally discriminated on the basis of race in investigating and prosecuting Bonasera for violating the single-family zoning ordinance.

Bonasera also argues that the district court erred in entering judgment on her claim that the City's selective enforcement of the zoning ordinances has a disparate impact on Hispanics. "[A] showing of significant discriminatory effect suffices to demonstrate a [prima facie] violation of the Fair Housing Act." Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1543 (11th Cir. 1994). A plaintiff can demonstrate a discriminatory effect in two ways: it can demonstrate that the decision has a segregative effect or that "it makes housing options significantly more restrictive for members of a protected group than for persons outside that group." Hous. Investors, Inc. v. City of Clanton, Ala., 68 F. Supp. 2d 1287, 1298 (M.D. Ala. 1999). On appeal, Bonasera advances both theories – that the City's selective enforcement of this zoning ordinance had a harsher impact on Hispanics than Caucasians and had a segregative effect.

Typically, a disparate impact is demonstrated by statistics. Hallmark Dev.,

---

against Hispanic persons. Only one of those citations, however, was for a violation of the requirement that the property be limited to "one-family residences and related uses." The other citations pertained to different rental issues.

Inc., 466 F.3d at 1286. Although no "single test controls in measuring disparate impact," certain guidelines have developed. Id. We have held that (1) it may be inappropriate to rely on "absolute numbers rather than on proportional statistics;" (2) "statistics based on the general population [should] bear a proven relationship to the actual applicant flow;" and (3) "the appropriate inquiry is into the impact on the total group to which a policy or decision applies." Id. (citations omitted).

In this case, Bonasera presented evidence showing that of the thousands of citations issued by the City in its history, eight citations have been issued against residents of Norcross for violating the R-100 zoning ordinance. All eight of these citations were issued against Hispanics. The evidence further establishes, however, that only two of these citations – including the one against Bonasera – related to a violation of the single-family use requirement. Citing a case from the Second Circuit, Bonasera asserts that the fact that the City rarely took enforcement actions such as the one taken in this case should be considered evidence that the City was discriminating against Bonasera and other Hispanics. See Tsombanidis v. City of West Haven, Conn., 129 F. Supp. 2d 136, 150 (D. Conn. 2001).

We agree with the district court that Tsombanidis is distinguishable from this case. In Tsombanidis, the district court found that a paucity of statistical evidence regarding a city's enforcement actions was not fatal to a finding of

8

disparate impact where the evidence indicated that other non-minority-owned facilities in violation of the city's zoning code had not been targeted for enforcement actions. In this case, in contrast, there is no evidence that the City was aware of any violations of the single-family zoning ordinance by white homeowners and chose to ignore them. Although Bonasera asserts that "second kitchens are a feature found in 10% of white homes," she presents no evidence that any of these homeowners were impermissibly using their homes as multi-family dwellings. "With selective-enforcement claims like this, evenhanded application of the law is the end of the matter." Schwarz, 544 F.3d 1201, 1217 (11th Cir. 2008) (granting judgment on disparate treatment claim where plaintiff presented no evidence that handicapped persons were treated differently from non-handicapped persons); see United States v. Armstrong, 517 U.S. 456, 465 (1996) (explaining that a plaintiff bringing a selective-enforcement claim based on race "must show that similarly situated individuals of a different race were not prosecuted"); Ah Sin v. Wittman, 198 U.S. 500, 507-08 (1905) (rejecting a claim of selective enforcement based on Chinese nationality because the plaintiff failed to allege "that there were other offenders against the ordinance than the Chinese, as to whom it was not enforced"). Furthermore, Bonasera presents no evidence that the City's enforcement of the single-family zoning ordinance has had a significant

9

impact on the City's Hispanic population. For these reasons, we conclude that there is no genuine issue of material fact as to Bonasera's disparate impact claim.

Because we conclude that Bonasera presented no direct or circumstantial evidence of discriminatory intent or of disparate impact to support her claims under the FHA, we also conclude that Bonasera has failed to support her claim under the Equal Protection Clause. See Strickland v. Alderman, 74 F.3d 260, 264 (11th Cir. 1996) (noting that an equal protection claim based upon the application of a neutral statute requires evidence that the defendant unequally applied the statute for the purpose of discriminating against the plaintiff). Accordingly, we affirm the order of the district court.

**AFFIRMED.**